IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| REBECCA A. LEWIS, ) | CIVIL ACTION 4:08-2386-GRA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**PROCEDURAL HISTORY**

The plaintiff, Rebecca A. Lewis, filed applications for DIB on May 13, 2002, alleging disability since February 15, 2002, due to a stroke and a seizure disorder. (Tr. 80-82, 98). Her claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on February 19, 2004. On July 21, 2004, the ALJ issued a decision denying plaintiff's claim, finding there were significant number of jobs in the national

economy that she could perform. Plaintiff requested review by the Appeals Council. In an order dated September 23, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for additional administrative action, including consideration of new evidence, a neuropsychological evaluation performed in November 2004. (Tr. 73-75). A supplemental hearing was held by the smae ALJ, William F. Pope, on February 17, 2006, at which plaintiff appeared with her non-attorney representative and testified, along with a vocational expert. (Tr. 300-319). The ALJ issued a partially favorable decision, on May 23, 2006, finding that plaintiff had been disabled since January 26, 2005, the date she attained age 55 and qualified for the "advanced age" category pursuant to the Social Security Administration's (SSA's) Medical-Vocation Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2. (Tr. 17-28).[1] The ALJ found that plaintiff had not been disabled prior to that date, concluding that plaintiff could perform a limited range of unskilled light work that existed in significant numbers in the national economy. (Tr. 25-26). The ALJ's May 2006 decision became the "final decision" of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review on June 4, 2008. (Tr. 8-11). See 20 C.F.R. § 404.981. Plaintiff filed this action on July 1, 2008, seeking reversal of the decision and an award of benefits based on disability commencing February 15, 2002, not January 26, 2005.

**FACTUAL BACKGROUND**

The plaintiff, Rebecca A. Lewis, was born January 26, 1950, and was 52 years old as of her alleged onset date in February 2002 and 56 years old as of the ALJ's decision in May 2006. She completed high school, obtained an associate's degree in business, and has a thirty-four year work

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2008 edition.

history (Tr. 95-96), the last twenty-eight of those years as a social services administrator in the Department of Social Services. (Tr. 99, 104, 111-112, 248, 268-269, 294).

## DISABILITY ANALYSIS

The plaintiff's arguments consist of the following, quoted verbatim:

(1) The ALJ erred in failing to properly evaluate plaintiff's subjective symptoms.

(2) The ALJ's finding that plaintiff's disability did not commence until January 26, 2005, her 55th birthday, rather than February 15, 2002, the date of her stroke, is based on misinterpretation of the medical opinion evidence and is unsupported by any substantial evidence in the record.

In his decision of May 23, 2006, the ALJ made the following findings:

1. The claimant has met the insured status requirements for Title II benefits through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date.

3. The medical evidence establishes that the claimant has headaches, cognitive impairment/dementia, and fatigue, which are "severe" impairments as defined in the regulations, but not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No.4. (20 CFR § 404.1520).

4. The claimant's allegations concerning the degree of her impairment prior to January 26, 2005 are not substantiated by the total evidence of record and not credible.

5. The claimant has retained the residual functional capacity to perform work with restrictions that require simple, routine work: a low stress, supervised environment; no interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; and avoidance of hazards such as heights and dangerous machinery. (20 CFR § 404.1545).

6. The claimant is unable to return to her past relevant work as a social services administrator. (20 CFR § 404.1565).

7. The claimant was 52 years of age on the alleged onset date, which is defined as "closely approaching advanced age," and she is currently 56 years of age, which is defined as "advanced age." (20 CFR § 404.1563).

8. The claimant has more than a "high school" education. (20 CFR § 404.1564).

9. The claimant's acquired skills from past relevant work are not transferable to other work because of the residual functional capacity restriction of simple, routine work. (20 CFR § 404.1568).

10. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples include the light, unskilled jobs of process machine tender, production assembler, and tagger/ticketer, with over 600,000 such jobs in the national economy.

11. Based on an exertional capacity for light work and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.14.

12. As of January 26, 2005, the date in which the claimant attained the age of 55, and considering an exertional capacity for light work and the claimant's age, education, and work experience, section 404.1569 and Rule 202.06, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4 direct a conclusion of "disabled."

13. The claimant has been under a "disability," as defined in the Social Security Act, since January 26, 2005, the date in which she attained the age of 55, but not prior thereto. (20 CFR § 404.1520).

Based on the above findings, the ALJ made the following decision:

Based on the application for a period of disability and disability insurance benefits filed on May 13, 2002, the claimant was disabled under sections 216(i) and 223(d) of the Social security Act, commencing January 26, 2005, but not prior thereto.

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## ARGUMENTS

Plaintiff argues that the ALJ's finding that her disability did not commence until January 26, 2005, her 55th birthday, rather than February 15, 2002, the date of her stroke, is based on misinterpretation of the medical opinion evidence and is unsupported by any substantial evidence in the record. Specifically, plaintiff argues that the ALJ summarizes the letter to plaintiff dated April 22, 2002, by Dr. Ngo as having told her in a letter on that date that "she could return to work but that if she felt emotionally unable, it was fair to consider long-term disability." (Plaintiff's brief quoting ALJ's decision). Plaintiff asserts that this is a completely inaccurate representation of what Dr. Ngo said at that time. Plaintiff further argues that the ALJ failed to provide an adequate rationale for rejecting the opinion of Dr. Brawley who conducted a comprehensive neuropsychological evaluation in November 2004 which was the basis of the Appeals Council's Order of September 23, 2005, vacating the ALJ's first decision on the grounds that Dr. Brawley's findings "suggest that the claimant's condition may be of greater severity than previously determined." (Tr. 73-74). Thus, plaintiff asserts that the ALJ failed to provide adequate rationale for rejecting the opinions of Drs. Ngo and Brawley.

Additionally, plaintiff asserts that she does not contend that she has been disabled by seizures since her stroke but by "persistent symptoms of fatigue, residual muscle weakness and cognitive deficits." (Plaintiff's brief, p. 10). Plaintiff contends that review of the medical record reveals that Dr. Ngo noted plaintiffs' memory as fair and her motor function and gait as "unchanged" from prior findings which is not inconsistent with his conclusion that she was medically disabled by the combined residual effects of her stroke.

The Commissioner argues that there is substantial evidence to support the ALJ's decision with respect to the medical evidence of record. The Commissioner argues that while plaintiff suffered a stroke in February 2002, she failed to reveal functional limitations for any consecutive 12-month period between February 2002 and January 2005 that would preclude her from performing the reduced range of unskilled light work found by the ALJ. Defendant asserts that "Dr. Ngo's statement that he would not object to plaintiff working, and that he would, in fact, support her if she did so, supports the ALJ's determination that plaintiff was not disabled." (Def.'s brief). The Commissioner further asserts that when Dr. Ngo indicated that plaintiff was under a "medical disability" and in light of the fact that his April 2002 statement refers to plaintiff's ability to return to her past work and evidence showing that she actually received "disability" benefits from other agencies "it is not clear that Dr. Ngo contemplated plaintiff's status under the strict standards of the Act which requires not only the inability to perform one's past work, but any work in the national economy." Nonetheless, defendant argues that Dr. Ngo's opinion was not supported by the overall evidence of record, including his clinical findings, which showed that the claimant made excellent recovery and had no seizure activity. Defendant asserts that the ALJ's decision is supported by the records of Drs. Wannamaker and Pusey.

A review of the ALJ's decision reveals he found the following with respect to Dr. Ngo's reports and opinion:

> The claimant's neurologist, Dr. Thuy Ngo also reported on March 13, 2002, that there did not seem to be evidence of permanent cerebral injury. He recommended treating the claimant's memory loss with Exelon. The claimant continued to report having no seizure activity, and furthermore, she denied any problems with syncope, visual disturbance, headache, vertigo, dysphasia, or motor impairment. On March 25, 2002, he reported that the claimant had made "excellent recovery." Dr. Ngo anticipated she could return to work after evaluation in April 2002, but that she could

not operate machinery, climb heights, or work around heavy machinery. On April 22, 2002, Dr. Ngo told the claimant she could return to work but that if she felt emotionally unable, it was fair to consider long-term disability. He said he had no objection to her continuing to work if she so chose. On June 6, 2002, Dr. Ngo indicated the claimant would be on medical disability due to seizure with intractability and recent bihemispheric stroke.

(Tr. 19).

The ALJ further found:

Dr. Ngo reported the claimant could return to work in April 2002, but that she should avoid hazards. However, after talking with the claimant, Dr. Ngo indicated she could consider disability if she felt unable to work. His later opinion in June 2002 that the claimant was disabled due to seizure and stroke is not given great weight. Firstly, the evidence shows that the claimant's seizure disorder is well controlled; and secondly, the evidence also shows the claimant made excellent recovery from her stroke. His opinion that she was disabled overwhelmingly appears based on the claimant's desire to be declared disabled and not on her actual physical or mental condition.

(Tr. 22).

. . .

In arriving at a conclusion that the claimant was not disabled prior to January 26, 2005, I have considered the June 2002 opinion of Dr. Ngo that the claimant was disabled, however, I do not give his opinion great weight for the reasons as set forth earlier in this decision. Dr. Ngo initially reported the claimant could return to work in April 2002, but that she should avoid hazards. However, in June 2002, he reported she was unable to work. His opinion appears based on the claimant's allegation that she was disabled. His opinion is not supported by the overall evidence of record, including his clinical findings, which showed the claimant made excellent recovery and had no seizure activity. . . . I find that the total evidence of record does not support a finding that the claimant is disabled.

(Tr. 26).

After a review of the record, the undersigned concludes that the ALJ's reasoning for discounting Dr. Ngo's opinion is not based on substantial evidence. First, the ALJ's interpretation of Dr. Ngo's letter appears to be a mischaraterization. Dr. Ngo stated on March 25, 2002, five days

after he stated that plaintiff still needed 24-hour supervision, that "we anticipate that she will be able to return to work after reevaluation in April." (Tr. 198). After the next evaluation, Dr. Ngo stated:

> It is fair for you to consider long term disability. If you emotionally feel that you would do better to continue to work, I do not have any objection to your trying to go back to work. Should you find that you are not capable of working once you have tried, we could certainly declare you disabled at that time. . . .

(Tr. 197).

Then on June 6, 2002, Dr. Ngo stated that she would be on "medical disability, due to seizure with intractability and recent bihemispheric stroke." (Tr. 196). Thus, the ALJ's finding that Dr. Ngo reported plaintiff could return to work in April 2002 is incorrect. Dr. Ngo did not opine that plaintiff could return to work only that he had no objection to her trying if she emotionally felt she would do better to continue to work. Additionally, Dr. John Taylor performed a neuropsychological evaluation on May 13, 2002. Dr. Taylor's impression was "she performed normally on attention but mental control was borderline. She is demonstrating impaired self regulation and monitoring language and visual spatial abilities. Verbal learning and memory while low is within normal limits. Visual learning and memory was impaired. Current level of neuropsychologic functioning is consistent with mild to moderate cognitive impairment. She is demonstrating evidence of bilateral impairment with somewhat greater right sided involvement. Her prognosis of improvement in neuropsychologic functioning is good." (Tr. 174). Further, Dr. Taylor noted that Dr. Ngo, her neurologist, "believes that Ms. Lewis will need to be on disability." (Tr. 173). On June 23, 2003, Dr. Te-Long Hwang, neurologist, stated that an EEG conduction results were "abnormal" and quite a few clinical myoclonic jerks recorded by the EEG technician. (Tr. 239). Dr. Wannamaker noted on February 20, 2003, that plaintiff "has seemingly done better since I last saw her. The apparent jerks have stopped.

She continues to have problems with cognition, she is forgetful. . . . She still has cognitive impairment." (Tr. 229). A review of Neurologist Dr. Frank O. Pusey's report of January 15, 2005, reveals that he found plaintiff had difficulty with right sided weakness since her significant stroke in 2002 and that "she has been left with difficulty with balance as well as mild right weakness and decreased stamina." On January 23, 2006, Dr. Pusey noted that plaintiff was continuing to complain of memory problems and some discoordination and weakness of the hands. His neurologic exam revealed some "discoordination of the hands" and his impression was history of stroke and seizure and mild cognitive impairment.

Plaintiff argues that ALJ erred in discounting Dr. Brawley's report. The plaintiff is correct in her brief that Dr. Brawley's comprehensive neuropsychological evaluation in November 2004 was one basis of the Appeals Council's Order of September 23, 2005, vacating the ALJ's first decision on the grounds that Dr. Brawley's findings "suggest that the claimant's condition may be of greater severity than previously determined." (Tr. 73-74).

A review of the ALJ's decision in relation to Dr. Brawley's report reveals the following:

> The claimant's representative submitted a neuropsychological evaluation performed by Tora Brawley, Ph.D., in November 2004. One aspect of Dr. Brawley's report was that he indicated the claimant's manual dexterity on testing was severely impaired. This assessment was based on a finger oscillation task and grooved pegboard test. However, despite her "severely impaired" manual dexterity, his report reveals the claimant said she was able to drive and cook, the claimant said that her cognitive impairment had improved but was worse when she was frustrated or panicked. However, she said she had not had any seizures since February 2002. Although test results indicated poor working memory skills and severely impaired speed of mental tracking, Dr. Brawley noted she exhibited good understanding of directions, persisted with little encouragement, and had intact attention but needed some repetition of instructions. On the WAIS-III, the claimant obtained a verbal IQ score of 92, performance score of 72, and full scale score of 81, indicative of low average range of intellectual functioning. The 20-point difference in scores reflected a probable decline from prior functioning. Her overall performance was consistent with mild to

> moderate brain dysfunction with significant sparing noted in some areas of memory functioning. Dr. Brawley indicated the claimant had a diagnosis of dementia due to her current cognitive status, fatigue as testing progressed, and reactive depression and anxiety; and that she could not return to her previous work. However, Dr. Brawley went on to report that, with successful treatment of her reactive depression and anxiety, the claimant would psychologically benefit if she could find a job that she was able to physically and mentally perform, and that this should be assessed by a vocational consultant. However, it is noted that the claimant reported she was not taking any medication for depression at the time of the evaluation. Dr. Brawley also noted the claimant ambulated with[out] any assistance device.

(Tr. 20).

. . .

> At the November 2004 neuropsychological evaluation, the claimant admitted to improvement in her cognitive impairment, but related having problems with stress and frustration. Dr. Brawley reported the claimant exhibited good understanding of directions, persisted with little encouragement, and had intact attention although she needed some repetition of instructions. While the November 2004 examination, performed at the request of the claimant's representative, showed IQ results lower than before (verbal 92, performance 72, and full scale 81), the new scores still place the claimant within the "low average range of intellectual functioning." The examiner used "estimated premorbid' scores to show a significant decrease in which he asserts the qualified for a diagnosis of dementia. Dr. Brawley felt the claimant could not return to her previous work, but that she could perform other work, which is consistent with the findings in the July 21, 2004, decision.

(Tr. 22).

. . .

> I do not find the November 2004 evaluation which indicated the claimant had severely impaired manual dexterity is sufficiently supported by other evidence of record, especially her daily activities that demonstrate the claimant is fully capable of using her hands and arms for fine and gross manipulation. Furthermore, should the claimant have decreased manual dexterity, this would not have a significant impact upon her ability to perform the functions required by light work. To perform light work, arms and hands are needed to grasps, hold and turn objects. Generally, light work does not require the use of the fingers for fine activities. . . .

(Tr. 24).

Based on the decision, the ALJ discounted Dr. Brawley's opinion finding that it was not supported by other evidence of record, "especially her daily activities that demonstrate the claimant is fully capable of using her hands and arms for fine and gross manipulation." The ALJ did not set forth what daily activities he was referring. Additionally, the ALJ noted that the evaluation by Dr. Brawley was done at the request of the claimant's attorney which is incorrect as it was done at the request of the long-term insurance carrier.

Furthermore, the ALJ stated "should the claimant have decreased manual dexterity, this would not have a significant impact upon her ability to perform the functions required by light work." This finding is in direct contradiction to what the VE testified to. When the ALJ added to the hypothetical given to the VE to assume "only the manual dexterity limitations set forth by Dr. Brawley, the VE testified that no jobs, including light jobs, whether they involved finger dexterity or not, could be performed on a sustained basis by an individual with such limitations." Additionally, the VE stated "finger dexterity" when Dr. Brawley found plaintiff had "severely impaired manual dexterity." (Tr. 253).

Based on the fact that there are misstatements in the ALJ's decision with respect to Dr. Ngo's and Dr. Brawley's opinions as set forth above, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision. In addition, the Court notes that the Appeals Council stated in its remand order that upon giving further consideration to the treating source opinion, as appropriate, the ALJ "may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite her impairments" and if necessary, "obtain evidence from a medical expert to clarify the nature and severity of the claimant's

impairment." (Remand Order, Tr. 73-74). Even though the Appeals Council did not state that it was a requirement, the ALJ did not do either. In the Commissioner's memorandum, he stated that "it is not clear" when Dr. Ngo stated that plaintiff was under a medical disability if he "contemplated plaintiff's status under the strict standards of the Act, which requires not only the inability to perform one's past work, but any work in the national economy." (Def.'s B. P. 15). If this was not clear, the ALJ, pursuant to the Appeals Council's Order, could have requested clarification. It is the duty of the ALJ to fully develop the record. Without the proper analysis as to Dr. Ngo's report, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in his evaluation of plaintiff's subjective symptoms. Plaintiff and defendants concede that the ALJ found plaintiff has objective evidence of "severe" impairments which could reasonably be expected to produce the subjective symptoms alleged. However, plaintiff argues that in finding that her disability did not commence until January 2005, the ALJ improperly rejected her consistent allegations of memory impairment, constant fatigue and weakness in her right arm since the stroke, inaccurately summarized her testimony regarding her subjective symptoms and activities; failed to even list her husband as a witness, much less consider his extensive testimony regarding her limitations; failed to consider plaintiff's excellent work record; and failed to consider the findings by both private and public agencies that she had been disabled at an earlier date. Plaintiff contends that while the ALJ does refer to her persistent allegations of fatigue since the stroke, he ignores the consistent statements in the documentary evidence and testimony by both plaintiff and her husband to the effect that she was only able to perform those activities for limited periods with extended rest periods in between, has no stamina, and is exhausted when she finishes such tasks as grocery shopping. Additionally, plaintiff argues that the ALJ did not provide

any explanation for rejecting plaintiff's allegations of severe short-term memory loss to a degree which would preclude any substantial gainful employment, including simple unskilled work.

Defendant asserts that the ALJ properly evaluated plaintiff's credibility. Defendant asserts that the ALJ found that plaintiff's relatively normal daily activities, while not strenuous, were also inconsistent with the allegations of total disability under the strict standard of the act.

In assessing complaints of pain, disability, and limited function, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain [disability and limited function] alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, [disability and limited function] along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain, disability and limited function itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant

has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJ's in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.*
>
> . . .
>
> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> . . .
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

In this case, a review of the hearing decision reveals that the ALJ found the following with respect to plaintiff's credibility after setting out the guidelines for analysis under Social Security Ruling 96-7:

> After careful review of the entire record, I find that the evidence as to the claimant's condition, activities, and capabilities, including her testimony at the hearing as to pain and other subjective symptoms, is not consistent with the degree of disabling impairments she alleged. Although the claimant has impairments that impose some limitations upon her ability to work, the evidence fails to substantiate that her impairments, either singly or in combination, are of the severity as to preclude the performance of all work-related activities.

(Tr. 23).

The ALJ did not conduct the proper analysis with respect to plaintiff's credibility but made a conclusory statement that he did not find her testimony, based on the evidence including her testimony of disabling pain and other subjective symptoms, to be "consistent with the degree of disabling impairments she alleged." While discussing the medical evidence, the ALJ stated that the evidence revealed that in June 2002, "she was capable of performing most light activities, walking unassisted, performing self-care unassisted, cooking and cleaning." In August 2002, she was capable of dressing herself and doing housework for a couple of hours at a time. As to her husbands explicit testimony, the ALJ only stated that "her husband reported in March 2003 that she did not need assistance with physical grooming but had difficulty with 'labor intense' activities. He reported the claimant did light raking and sweeping, and that she shopped alone, drove short distances, socialized with others, and attended church and Bible study once a week." Additionally, the ALJ failed to take into consideration the fact of plaintiff's long work history of working for the same employer for 28 years in advanced managerial positions in a job that she testified she loved very much and was devastated to have to give it up. Plaintiff testified that "I would like to say that I was very fortunate

-17-

that I had a job that I loved very, very much about broke my heart that Dr. N[g]o told me basically, you either quit and live or you work and you die. That was the options he gave me and it's - - I had to go on anti-depressant medicine because it devastated me so much to have to give up my job. And if the stroke hadn't come along, I would have still been working. I had not expectations to even consider retiring before 2010. . . ." (Tr. 292). Further, the ALJ did not discuss the husband's testimony at the hearing but only cited what the husband and "reported in March 2003." At the first hearing, plaintiff's husband testified that plaintiff has to perform household chores at her own pace, with frequent rest breaks, and when she does the grocery shopping, she has to lie down and rest after putting up the frozen foods. Since her stroke, he testified that she has had to take two or three naps a day for a total of two or three hours sleep a day and is unable to stay active for any length of time without having to rest. He further testified that she has experienced short-term memory loss, gets confused on the dates of her medical appointments and forgets when she gives permission to their son to do certain things. Her husband gave different examples of her short term memory problems.

At the first hearing, the plaintiff testified that since her stroke she had been unable to perform work due to constant fatigue, memory loss and weakness in her right hand. She testified that she could do some chores but had to stop and rest for a couple of hours between the chores. She testified that she is right hand dominant which she has weakness in causing her not to even be able to lift a gallon of milk without using the left hand as well. Plaintiff testified that she no longer does yard work and has to rest due to exhaustion if she does the grocery shopping. At the supplemental hearing, plaintiff testified that there had been no improvement in her condition, that she has trouble with her memory and stamina since the stroke. (Tr. 311). Plaintiff testified that she cannot get up and function

-18-

all day and was exhausted at the hearing and all she did was get up and get ready. Plaintiff further testified that if she is under any stress, she gets worse. (Tr. 317).

As set out above, the ALJ did not discuss the husband's testimony or the plaintiff's testimony in regards to her fatigue, weakness, and short-term memory loss. As to her daily activities, the ALJ did not discuss the fact that plaintiff testified that when she attempts to do daily activities, she becomes exhausted and has to rest. The ALJ appears to only make a conclusory statement after briefly citing testimony of daily activities that was taken out of context.

It may well be that substantial evidence exists to support the Commissioner's decision as to the credibility of the plaintiff in the instant case. The court will not, however, speculate on a barren record devoid of the appropriate administrative analysis. The undersigned does not find that the ALJ gave specific findings supported by specific evidence of record to find the plaintiff's testimony not credible based on her claim that she is disabled due to fatigue and lack of stamina, memory loss, and weakness in her right hand due to her stroke in 2002 and did not discuss the testimony of her husband. Thus, the undersigned recommends that this case be remanded for proper consideration and explanation of findings as to the plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and Craig v. Chater, supra.

## CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four

of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above to determine if plaintiff is entitled to benefits from the alleged onset date of February 2002, until January 26, 2005, the date the ALJ found plaintiff became disabled.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 17, 2009
Florence, South Carolina